IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PESHA AMA, :
       Petitioner, :
           v. : Case No. 3:21-cv-149-KAP
VICKY MOSER, WARDEN, :
F.C.I. LORETTO, :
       Respondent :

## Memorandum Order

Petitioner Pesha Ama, an inmate at F.C.I. Loretto, filed a petition at ECF no. 7 for a writ of habeas corpus pursuant to 28 U.S.C.§ 2241, attacking the forfeiture of 41 days good conduct time (GCT), *see* 18 U.S.C.§ 3624, ordered as a result of a disciplinary proceeding in which petitioner was charged with possessing a cellphone, a violation of disciplinary Code 108, *see* 28 C.F.R.§ 541.3, table 1. (There were other sanctions imposed but they have expired.) The petition is denied without need of response by the respondent. *See* 28 U.S.C.§ 2243.

A disciplinary hearing officer (DHO) held a hearing at F.C.I. Petersburg on May 25, 2020 and found Ama guilty of possessing a cellphone that had been found in a baseboard heater of the petitioner's cell. The DHO noted that at the hearing Ama stated "It was my phone," and also noted that at the time of the search on May 12, 2020, Ama's cellmate had denied possession or knowledge of the cellphone to corrections officer Fleek, the officer who had discovered the phone. The incident report had been written by a Lieutenant McWilliams, and a copy had been given to Ama on May 12, 2020, by a staff member named Plum. Based on Ama's admission, the DHO found Ama guilty and imposed a sanction of loss of phone privileges for six months, disciplinary segregation for 15 days, and loss of 41 days of GCT.

Ama appealed through the three levels of the inmate administrative remedy system provided by the Bureau of Prisons. In the administrative appeal at the regional level the reviewing authority noted that not only did Ama not contest the possession of the cellphone, he had provided McWilliams with the PIN number she used to unlock the phone. At the final, national level of review, the reviewing authority responded to Ama's appeal with a concession that Ama had received the written DHO report more than 15 days after the decision, but the administrator of the appeals system found no basis for relief from this because there was no information to suggest that this had any impact on Ama's ability to prepare a defense.

Ama argues throughout his *pro se* petition that his GCT should be restored because (1) the officer who conducted the cell search was not the officer who wrote the incident report; (2) more penalties were actually imposed on him than the DHO ordered; and (3) he received the DHO's written decision more than 15 days after the decision, which hindered his appeal of his sanctions "which I felt were unfair in the middle of a pandemic."

After Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974), a prison disciplinary hearing that results in the loss of GCT or otherwise extends the time spent in custody must provide at least these procedural safeguards: an impartial decision-making body; at least twenty-four hours of advance written notice of the charges; an opportunity to call witnesses and present documentary evidence; assistance from an inmate representative if the charge involves complex issues or if the prisoner is illiterate; and a written decision explaining the evidence relied upon and the reasons for the disciplinary action. *See* Campbell v. Warden Allenwood USP, 808 Fed.Appx. 70, 72 (3d Cir. 2020). By contrast, where no constitutionally significant sanction is imposed, there is no right to the Wolff v. McDonnell procedures, or even to a hearing at all.  *See* Sandin v. Conner, 515 U.S. 472, 486 (1995)(inmate given 30 days in the RHU did not suffer any "atypical, significant deprivation" that would implicate the Due Process Clause).

The substantive protection an inmate has from arbitrary imposition of sanctions is that disciplinary proceedings that result in loss of GCT or otherwise will affect the length of a sentence or impose some atypical, significant deprivation must require the production of "some evidence" of guilt to the charges made against the inmate. Superintendent v. Hill, 472 U.S. 445, 455 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.") This is codified in the Bureau of Prisons' regulations at 28 C.F.R.§ 541.8(f)(2017), requiring that "[t]he DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *See* Bureau of Prisons Program Statement 5270.09, Inmate Discipline Program (available at https://www.bop.gov/policy/progstat/5270_009.pdf, substantially setting out 28 C.F.R.§ 541.1-8).

Based on the foregoing, Ama's arguments are meritless.  First, there is no requirement that the reporting officer be the author of the incident report. Ama made this argument in the administrative appeals process but it is not even certain that Ama intends to press this argument here.

In the administrative appeals process, Ama's claim that he was sanctioned more severely than the DHO ordered was rejected for lack of evidence. Even if Ama proved that claim it would not compel the overturning of the loss of GCT for at least two reasons: (1) the additional disruption in access to the Trulincs system that Ama alleges did not foreclose all communication with his family and could have been imposed without notice or hearing under Sandin v. Conner; and (2) any such sanction has already expired and is beyond the power of this court to correct in habeas corpus. The power to issue writs of habeas corpus does not give a court power to restore GCT as a compensatory measure for a wrong that occurred *dehors* the DHO proceeding (and if Ama is correct, contrary to the DHO's order.)

Finally, the late provision of the DHO decision could not have impaired Ama's defense at the hearing since it was the decision provided after the hearing. Nor did it impair his appeal to this court: no argument by Ama has been rejected for untimeliness or procedural default. Any alleged

impairment of an administrative appeal is therefore immaterial to this habeas proceeding.

I add the following discussion because inmates filing similar petitions from Loretto often make the claim that any untimeliness in the receipt of the DHO decision forfeits the BOP's power to impose a sanction. *See e.g.* Trinidad v. Moser, Case No. 3:20-cv-221-KAP (W.D.Pa.). I hope this explanation is disseminated:

It is true that the DHO report is ordinarily provided to the inmate within fifteen days of the DHO decision, *see* Bureau of Prisons Program Statement 5270.09 (available at https://www.bop.gov/PublicInfo/ execute/policysearch?todo=query&series=5000, substantially setting out 28 C.F.R.§ 541.1-8). As I have written before, however, even though a government agency is obliged to follow its regulations that have force of law, *see* Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir.1988), not every provision in a regulation has the force of law, *see* Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir.2011) ("[N]oncompliance with a BOP program statement is not a violation of federal law"), confers a private right of action on petitioner, or implies that the remedy for a violation would be the dismissal of charges. Program Statements are internal agency guidelines that although important are less formal than regulations subject to the Administrative Procedures Act. *See* Reno v. Koray, 515 U.S. 50, 61 (1995).

More generally, to imply a legal remedy from the failure to obey the text of a federal regulation, statute, or other form of law, a litigant must assert the violation of a federal right, not merely a violation of the law. Blessing v. Freestone, 520 U.S. 329, 340 (1997). According to the Supreme Court, three factors to consider are: 1) whether the provision was intended to benefit the litigant; 2) whether the alleged right is clear enough that enforcement would not strain judicial competence; and 3) whether the provision imposes a binding obligation.

In this case, it can be fairly said that the first two Blessing v Freestone factors support petitioner, but the third one does not. Use of the word "ordinarily" typically signals an aspiration and not an obligation. (To use the Supreme Court's phraseology, *see* Blessing v. Freestone, 520 U.S. at 341, the term is precatory rather than mandatory.)  The Program Statement does not unambiguously confer a substantive right to the relief requested, or even hint that the remedy for an untimely DHO decision is nullification of the power to impose sanctions. *See* Health Science Funding, LLC v. The New Jersey Department of Health and Human Services, 658 Fed.Appx. 139, 141 (3d Cir. 2016), *discussing* Grammer v. John J. Kane Regional Centers-Glen Hazel, 570 F.3d 520 (3d Cir. 2009). This court cannot imply such a remedy.

DATE: March 21, 2022

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Pesha Ama, Reg No. 91015-083
F.C.I. Loretto
P.O. Box 1000
Cresson, PA 16630